# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

MICHAEL ZACHMANN,
individually and on behalf of a class of
similarly situated persons,

          Plaintiff,

   v.

LONKERO LLC d/b/a THE LONG DRINK
COMPANY, an Indiana Corporation,

          Defendant.

Case No. 7:22-cv-10701 (NSR)

## Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Complaint

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ..................................................................................................................... 1

FACTUAL BACKGROUND ..................................................................................................... 1

LEGAL STANDARD ................................................................................................................ 2

ARGUMENT ............................................................................................................................. 3

    I.    THE COMPLAINT'S ALLEGATIONS OF DECEPTIVE LABELING ARE
          SUFFICIENT. ............................................................................................................ 3

    II.   RULE 15 MANDATES THAT LEAVE TO REPLEAD SHOULD BE GIVEN
          FREELY .................................................................................................................. 13

CONCLUSION ......................................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Page(s)**

## **CASES**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................... 2

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed.2d 929 (2007)........................... 3

*Campbell v. Whole Foods Market Grp.*,
    516 F. Supp. 3d 370 (S.D.N.Y. 2021) .................................................... 2, 4

*Dumas v. Diageo PLC*,
    2016 WL 1367511 (S.D. Cal. Apr. 6, 2016)............................................... 9

*Forschner Group v. Arrow Trading Co.*,
    30 F.3d 348 (2d Cir. 1994) ...................................................................... 10

*Hardy v. Ole MexicanFoo*ds, Inc.,
    2022 WL 2906395 (W.D.N.Y. July 21, 2022) ......................................... 8

*Hesse v. Godiva Chocolatier, Inc.*,
    463 F.Supp.3d 453 (S.D.N.Y. 2020) .............................................. 4, 5, 13

*Kay v. Copper Cane,LLC*,
    546 F. Supp. 3d 1014 (N.D. Cal. 2021) .................................................... 6

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
    797 F.3d 160 (2d Cir. 2015) .................................................................... 13

*Lynch v. City of New York*,
    952 F.3d 67 (2d Cir. 2020) .................................................................... 2, 3

*Mantikas v. Kellogg Co.*,
    910 F.3d 633 (2d Cir. 2018) ...................................................................... 4

*Marty v. Anheuser-Busch Companies, LLC*,
    43 F.Supp.3d 1333 (S.D. Fla. 2014) ............................................... 5, 6, 8

*Nelson v. MillerCoors, LLC*,
    246 F.Supp.3d 666 (E.D.N.Y. 2017) ....................................................... 8

*Peacock v. Pabst Brewing Compan*y, LLC,
    491 F.3d 713 (E.D. Cal. 2020)............................................................. 6, 7

*Shalikar v. Asahi Beer U.S.A., Inc.*,
   2017 WL 9362139 ................................................................................................ 7

*Valcarcel v. Ahold U.S.A., Inc.*,
   577 F. Supp. 3d 268 (S.D.N.Y. 2021) ............................................................ 2, 3

*Wasser v. All Market,Inc*,
   2017 WL 11139701 (S.D. Fla. Nov. 13, 2017) ................................................ 7

*Williams v. Gerber Prod. Co.*,
   552 F.3d 934 (9th Cir. 2008) ........................................................................ 13

## <u>RULES</u>

Federal Rule of Civil Procedure 8 ...................................................................... 2
Federal Rule of Civil Procedure 9 ...................................................................... 2
Federal Rule of Civil Procedure 15 .................................................................. 13

Plaintiff Michael Zachmann ("Plaintiff") respectfully submits this memorandum of law in opposition to Defendant Lonkero, LLC's ("Defendant") Motion to Dismiss Plaintiff's Class Action Complaint ("Motion").

For the reasons set forth below, the Court should deny the Motion.

## INTRODUCTION

Defendant presents a single argument why this matter should be dismissed.[1] It argues that it is absurd that a consumer could see a product named "The Finnish Long Drink," as well as a myriad of statements proclaiming the Products' Finnish origins, and believe they are from Finland. While typically, such questions of fact are for the jury, Defendant believes the proposition is so absurd that the Court should take the rare step and state unequivocally, as a matter of law, that no one can believe this.

But Defendant's position could not be further from the truth. Consumers can and are deceived by the name of the Products, and the other statements on the packaging, into believing the Products are from Finland. It is not an absurd proposition to say:

- That a product whose name is "The Finnish Long Drink" is from Finland;

- That a product claiming to be the "LEGENDARY TASTE FROM FINLAND" is "From Finland";

- That the "Top Selling TASTE OF FINLAND" was sold in Finland; and

- That a product "now available in America" was previously sold outside of America.

## FACTUAL BACKGROUND

Defendant's marketing and sale of its Products misleads consumers to believe the alcoholic beverages are imported from Finland by using: (1) the name of the product itself – The Finnish

---

[1] As stated in Plaintiff's Response letter to the Court on January 26, 2023, Plaintiff is dropping his requests for restitution and injunctive relief. *See* ECF No. 15, n.1.

Long Drink; and (2) additional misleading statements on its packaging and in advertising. *See* Complaint (ECF No. 1) (hereafter "Compl.") at ¶ 3. Those statements include "LEGENDARY TASTE FROM FINLAND", Try the Top Selling TASTE OF FINLAND," "now available in America," and "Now this legendary taste has finally been brought to America by the next generation of Finns who want the world to experience the refreshing and unique Finnish Long Drink." *Id.* ¶¶ 31, 36.

Each of these phrases, in isolation and *in toto*, lead consumers to believe that the Products are from Finland. *Id.* ¶¶ 4, 28, 45, 46. However, the Products are from New York. *Id.* ¶ 4. The only disclosure as to the true origin of the Products is in small nondescript text on the side of the cans, a location that a consumer cannot see when purchasing the Products because the cans are contained in a sealed outer cardboard package. *Id.* ¶37. As a result of these misrepresentations, Plaintiff and the Class members paid a premium price for the products. *Id.* ¶¶ 16, 22, 23, 41, 51-52, 54.

## LEGAL STANDARD

It is well-established that "[c]laims under GBL §§ 349 and 350 are not required to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b)." *Campbell v. Whole Foods Market Grp.*, 516 F. Supp. 3d 370, 381 (S.D.N.Y. 2021) (citation omitted). Thus, to survive a Rule 12(b)(6) motion the Complaint need only set forth "a short and plain statement of the claim showing that [Plaintiff] is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Valcarcel v. Ahold U.S.A., Inc.,* 577 F. Supp. 3d 268, 275 (S.D.N.Y. 2021)(quoting *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020)). It is equally well-established that "'[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* at 275 (quoting *Ashcroft v. Iqbal*, 556 U.S.

662, 679 (2009). Indeed, "[b]ecause plausibility is a standard lower than probability, a given set of actions may well be subject to diverging interpretations, each of which is plausible." *Lynch*, 952 F.3d at 75 (citation omitted). Consequently, "[t]he choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion." *Id.*

As the United States Supreme Court has recognized, "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed.2d 929 (2007)) Thus, "'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Valcarcel*, 577 F.Supp.3d at 275 (quoting *Twombly*, 550 U.S. at 556).

## ARGUMENT

### I. THE COMPLAINT'S ALLEGATIONS OF DECEPTIVE LABELING ARE SUFFICIENT.

Defendant's sole justification for dismissal is that no reasonable consumer could view the name "The Finnish Long Drink" and believe it was from Finland. Def. Mem. at 4. It claims the name is a "category" of drink, not a place of manufacture. *Id.*

But to reach this conclusion, Defendant ignores both the full name of the Products, "The Finnish Long Drink", which is more than just naming a category of drink, as well as how the name works in conjunction with the myriad other statements that were likewise on the label and are at issue in the litigation, specifically:

- LEGENDARY TASTE FROM FINLAND;
- Try the Top Selling TASTE OF FINLAND;
- "now available in America"; and

- "Now this legendary taste has finally been brought to America by the next generation of Finns who want the world to experience the refreshing and unique Finnish Long Drink."

As the Court is no doubt aware, "[i]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial [,]" the courts "therefore consider the challenged advertisement as a whole[.]" *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018). Defendant does not explain how these additional phrases, in conjunction with the name, would not be misleading to the reasonable consumer—as a matter of law—particularly since "this inquiry is generally a question of fact not suited for resolution at the motion to dismiss stage." *Campbell v. Whole Foods Market Grp.*, 516 F.Supp.3d 370, 381 (S.D.N.Y. 2021) (citation omitted).

Courts in this district have held that similar phrases could mislead a reasonable consumer. For example, in *Hesse v. Godiva Chocolatier, Inc.*, a class of consumers challenged the chocolate manufacturer's statement "Belgium 1926" as misleading consumers into believing the product was from Belgium despite being manufactured in the United States. *Hesse v. Godiva Chocolatier, Inc.* 463 F.Supp.3d 453, 460 (S.D.N.Y. 2020). In rejecting the same argument Defendant makes here, the *Hesse* court reasoned:

> This is not one of the rare instances in which the Court may dismiss a consumer-protection claim on this posture. To the contrary, a reasonable consumer could view the phrase Belgium 1926 as representing that Godiva's chocolates are manufactured in Belgium. Godiva attempts to escape this plausible view by noting that it was founded in Belgium in the year 1926, and thus arguing that the representation is a "factually accurate phrase that imparts an unambiguous and historically accurate message." Def. Br. at 10. However, an equally, if not more, plausible inference is that the phrase represents *both* the provenance of the company—Belgium, in 1926—and a representation that its chocolates continue to be manufactured there. Indeed, Godiva does not explain why this latter inference is categorically unreasonable, given that it is plausible for a consumer to interpret the representation as meaning that its chocolates are made in the same place as they

were when the company was founded. The Court certainly cannot conclude, at this juncture, that *no* reasonable consumer could take such a view.

*Id.* at 467.

The reasoning in *Hesse* applies with equal force here. A reasonable consumer could read "The Finnish Long Drink," "LEGENDARY TASTE FROM FINLAND," "Try the Top Selling TASTE OF FINLAND," "Now available in America," and "Now this legendary taste has finally been brought to America by the next generation of Finns who want the world to experience the refreshing and unique Finnish Long Drink"; and believe the product was manufactured in Finland. As such, "[t]his is not one of the rare instances in which the Court may dismiss a consumer-protection claim on this posture." *Hesse*, 463 F.Supp.3d at 467.

The *Hesse* court is not alone in this, as courts in other circuits have found similarly. In *Marty v. Anheuser-Busch Companies, LLC*, for example, consumers brought suit against the manufacturer of Beck's for misleading consumers into believing the beer was German, based on claims that it "Originated in Germany" with "German Quality" while "Brewed Under the German Purity Law of 1516." *Marty*, 43 F.Supp.3d 1333, 1340 (S.D. Fla. 2014). The products contained a disclaimer "Product of USA, Brauerei Beck & Co., St. Louis, MO" on each can and "BRAUEREI BECK & CO, BECK'S © BEER, ST. LOUIS, MO" on the bottom of the carton. *Id.* The court rejected the argument that the disclaimer on the cans corrected any confusion because it was blocked by the carton, noting "[a] reasonable consumer is not required to open a carton or remove a product from its outer packaging in order to ascertain whether representations made on the face of the packaging are misleading." *Id.* at 1341. The court rejected the second disclaimer because "[a]lthough this statement contains the words 'St. Louis, Mo[.],' there is nothing in the statement which discloses where Beck's is brewed." Further, "[a] reasonable consumer may not necessarily look at the underside of the carton in deciding whether to purchase a product." *Id.*

The reasoning in *Marty*, holds perfectly here, where in both cases the labels' statements discuss the products' origins. Equally, just as in *Marty*, here the only disclosure that the Products are from New York and not Finland "is in a small nondescript text on the side of cans, a location that consumers cannot see when purchasing the Product because the cans are contained in a sealed outer cardboard package." Compl. ¶ 37. Just as in *Marty*, "[a] reasonable consumer is not required to open a carton or remove a product from its outer packaging in order to ascertain whether representations made on the face of the packaging are misleading."

Other courts have held likewise. In *Kay v. Copper Cane, LLC*, for example, the plaintiff brought suit against the California wine manufacturer for misleading consumers with the name "Oregon Pinot Noir" and the statements "coastal hills" of Oregon as an ideal region to grow wine, including a map of Oregon with leaves over the relevant valleys, and the statement "Purely Oregon, Always Coastal." *Kay*, 546 F. Supp. 3d 1014, 1019 (N.D. Cal. 2021). In rejecting the argument that this was puffery, the court noted, "a geographic reference on a wine label is understood to be an assertion about the origin of the product." *Id.* at 1025. There is a striking similarity between the name "Oregon Pinot Noir" and "The Finnish Long Drink" for the purposes of this analysis.

In *Peacock v. Pabst Brewing Company, LLC*, the plaintiff brought suit against the beer manufacturer, alleging the name "The Original Olympia Beer" coupled with the slogan "It's the Water" and an image of a cascading waterfall gave consumers the false impression that the beer was from the Olympia area in Washington. *Peacock*, 491 F.3d 713, 717 (E.D. Cal. 2020). The defendant moved to dismiss, arguing—just as Defendant does here—that no reasonable consumer could be misled into believing the products were from Olympia. *Id.* 719. In rejecting the claim, the court noted, "[a]lthough Olympia's packaging does not contain a map pinpointing the alleged misrepresentation or an explicit statement regarding the origin, Plaintiff alleges enough facts to

draw a reasonable inference that a reasonable consumer would believe Olympia Beer is brewed with water from the Olympia area of Washington." *Id.* at 720. Again, there is a striking similarity between the name "The Original Olympia Beer" and "The Finnish Long Drink" for the analysis. When coupled with the additional statements about its origins without a clear indication that it is no longer made in Finland, just as in *Peacock*, a reasonable consumer can and does believe the Products are from Finland.

In *Shalikar v. Asahi Beer U.S.A., Inc.*, the plaintiff brought suit against the beer manufacturer, alleging the name "Asahi," which means morning sun in Japanese, the Japanese Katakana script of the name, the Katakana script of "Super Dry," and the Japanese Kanji characters which translate to "dry taste," led consumers to believe the product was from Japan, notwithstanding a disclosure on the bottles stating it was brewed in Canada. *Shalikar*, 2017 WL 9362139, at *7. Despite the disclosure, the court concluded: "that the 'words, pictures [and] diagrams adorning the packaging' could give rise to a reasonable inference or belief that the Product was produced in Japan." *Id.* at *8. Like *Shalikar*, the totality of the statements on the label referencing and discussing Finland gives rise to a reasonable inference that the Products are from Finland.

In *Wasser v. All Market, Inc.*, the plaintiff bought suit against the manufacturer of Vita Coco for misleading consumers into believing the product was from Brazil with the phrase "Born in Brazil." *Wasser*, 2017 WL 11139701, at *4 (S.D. Fla. Nov. 13, 2017). The court noted that the phrase must be analyzed with respect to the wider marketing campaign to associate the product with Brazil and that the phrase was one of origin rather than heritage. *Id.* at *5. The court also rejected the claim that the disclosure of where it was actually produced disclaimed these statements because the bulk packaging often covered them or was obscured by the placement on the side panel

in small font. The same holds true here, where the overall marketing of the Products through the name and other statements leads reasonable consumers to believe the Products are from Finland. Equally, like *Wasser*, because the packaging hides the disclosure, it cannot clarify these statements. *See* Compl. ¶ 37.

Defendant's cited authority does not counsel otherwise. In *Nelson v. MillerCoors, LLC*, 246 F.Supp.3d 666, 675-76 (E.D.N.Y. 2017), the plaintiff brought suit against the beer manufacturer for its Foster's Beer, arguing the imagery indicated to consumers that it was from Australia. *Nelson*, 246 F.Supp.3d 666, 671 (E.D.N.Y. 2017). The court rejected the argument because each can stated "BREWED AND PACKAGED UNDER THE SUPERVISION OF FOSTER'S AUSTRALIA LTD, MELBOURNE, AUSTRALIA, BY OIL CAN BREWERIES, ALBANY GA AND FORT WORTH TX." *Id.* 675. The court distinguished the *Marty* decision, stating, "[u]nlike the product at issue in *Marty*, Foster's Beer 'utilizes no exterior packaging' that would obstruct the disclaimer." *Id.* (citing *Marty*, 43 F.Supp.3d 1333, 1344 (S.D. Fla. 2014).

Here, unlike *Nelson* but just like *Marty*, the only disclosure that the Products are from New York and not Finland is hidden by the packaging. *See* Compl. ¶ 37. Thus, the reasoning in *Nelson*¸ does not hold true here.

The same is true of the decision in *Hardy v. Ole Mexican Foods, Inc.*, where the plaintiff brought suit against a tortilla manufacturer asserting that the Mexican flag, the phrase "A Taste of Mexico!" and the name "La Banderita" indicated the products were from Mexico. *Hardy*, 2022 WL 2906395, at *1 (W.D.N.Y. July 21, 2022). The court rejected the argument that a reasonable consumer could be misled because it found the statements ambiguous and thus looked to the statement "Made in the U.S.A." and manufactured in Norcross, GA on the back of the label. *See id.* at *3-4 ("At worst, the front-label representations are ambiguous as to where the tortillas are

made, which is resolved after reading the clear country of manufacture on the back of the package"). In stark contrast here, like *Marty* and *Wasser*, the disclosure of where the Products are manufactured is hidden within the packaging. *See* Compl. ¶ 37. Thus, like *Nelson*, the reasoning in *Hardy* is simply inapplicable to the present suit.

The decision in *Dumas v. Diageo PLC* is likewise distinguishable. In *Dumas*, the plaintiff brought suit against the manufacturer of Red Stripe for its statements "Jamaican Style Lager" and "Taste of Jamaica" as implying the product was from Jamaica.  *Dumas*, 2016 WL 1367511, at *1 (S.D. Cal. Apr. 6, 2016). In rejecting the first claim, the court noted that the word "Jamaican" modifies the word "Style" not "Lager," and "the very fact that the word 'style' is used indicates the product is *not* from Jamaica." *Id.* at *4 (emphasis in original). In rejecting the second phrase, "The Taste of Jamaica", the court found this phrase ambiguous but concluded that "[w]hen viewed together with the phrase 'Jamaican Style Lager,' a reasonable interpretation of the phrase is that the beer is made in a way that people identify with Jamaica (either a particular process and/or a certain recipe) and evokes the spirit and feeling of Jamaica." *Id.*

The *Dumas* decision is readily distinguishable based on the number and kind of Finnish claims on Defendant's Products. For example, the name The Finnish Long Drink readily indicates it is from Finland, whereas in *Dumas*, the name Red Stripe had nothing to do with Jamaica. Likewise, here, the labeling includes the phrase "Now available in America" and the lengthy discussion of bringing the drink to America from Finland "by the next generation of Finns who want the world to experience the refreshing and unique Finnish Long Drink." Finally, while both use the phrase "Taste of," even if the Court were to apply the *Dumas* analysis, it would then look to the other words on the packaging for clarification. Defendant does not use the phrase "Finnish Style," which was the core of the *Dumas* analysis for dismissing the claim. Instead, it uses the

9

terms above, which are far more indicative of the product being from Finland.[2] To this end, unlike *Dumas,* where the phrase was "Taste *of* Jamaica," Defendant also uses the phrase "Legendary Taste ***From*** Finland." The word "from" is a stronger statement of origin than the word "of." *See* Merriam-Webster, FROM, available at https://www.merriam-webster.com/dictionary/from (defining "from" to include "used as a function word to indicate a starting point of physical movement. . .", providing as an example "came here *from* the city") (emphasis in original).

Finally, Defendant's reliance on the Second Circuit's decision in *Forschner Group v. Arrow Trading Co.*, is misplaced. First, the appeal arose following a bench trial in which both sides presented consumer surveys. *Foschner Grp.*, 30 F.3d 348, 352 (2d Cir. 1994). By contrast, here Defendant seeks dismissal before submitting similar survey evidence to the trier of fact.

Second, the Court of Appeal's analysis supports, rather than weakens, Plaintiff's claims. Specifically, the Court of Appeal's analysis of whether the phrase "Swiss Army knife" could be a designation of geographic origin turned on whether it was geographically descriptive, that is, "one that 'designates geographical location and would tend to be regarded by buyers as descriptive of the geographic location of origin of the goods or services.'" *Id.* at 355 (quoting 1 J.T. McCarthy, *Trademarks and Unfair Competition*, § 14.02). The court observed, "[i]f Victorinox or Wenger promoted a product as 'Swiss pocketknife,' the word 'Swiss' would be said to denote geographic origin." But the court could not "consider the word 'Swiss' otherwise than as part of the phrase 'Swiss Army.'" *Id.* It ultimately determined that:

> As used in the phrase Swiss Army knife, "Swiss" is read more naturally to modify "Army" than "knife"—and probably does. The phrase Swiss Army knife therefore denotes a knife of the type associated with the Swiss Army, rather than a military knife manufactured in Switzerland.

*Id.* at 356.

---

[2] *See Hesse*, *Marty*, *Kay*, *Peacock*, *Shalikar*, and *Wasser*.

Applying the *Foschner Group* analysis to the present suit yields the opposite result. Here, the name of the Products is "The Finnish Long Drink." The word "Finnish" is most naturally read to modify the phrase "Long Drink," indicating it is a drink from Finland. Under *Forschner Group*, the name constitutes a designation of geographic origin.

Defendant also argues that because the Products are a "category" they cannot be misleading as to their geographic origin. *See* Def. Mem. at 1. Not only does it fail to cite any authority supporting this proposition, but the language of the packaging does not support it.

 As Defendant's labeling acknowledges, the category is "long drink." *See,* Compl. ¶ 36 ("'LONG DRINK' is a top selling category of alcohol in Finland – now available in America"). This renders the use of "Finnish" geographically descriptive, just like the phrase Swedish Long Drink or American Long Drink would be geographically descriptive of the category. Therefore, it is clear that by adding the word "Finnish,"  Defendant intended to mislead the consumer into believing that the product is actually from Finland.

Defendant's reference to other products with geographic words as part of their names equally misses the point. "Polish sausage" is a type of sausage distinguishable from other sausages. "Swedish meatball" is a type of meatball distinguishable from other types of meatballs. "Italian dressing" is a type of dressing distinguishable from other dressings. "English muffins" is a type of baked good distinguishable from other muffins. "French fries" is a type of prepared potatoes distinguishable from other types of cooked potatoes. But, as Defendant's packaging acknowledges, "long drink" is a type of drink distinguishable from other types of drinks. "Long" is the categorical descriptor, not "Finnish". The inclusion of the word "Finnish" subcategorizes the product's geographic origin. Thus the better analog would be "American French fries," indicating the geographic origin of the product category.

11

Defendant's attempt to analogize to other cocktails is misplaced for the same reason since "Manhattan" is a drink category, just as "Long Drink" is a drink category. By contrast a "Bemelmans Manhattan" is renowned and geographically centered, just as "Finnish Long Drink" is renowned and geographically centered.

But there is a second reason the cocktail analogy is inapt: when you go to Bemelmans and order a Manhattan, you know where it is made. The same is not true of packaged goods. And there is nothing that says "Swedish meatball" cannot be from Sweden; rather, it is left to the packaging to provide that detail. But here, the disclaimer was hidden. Thus, consumers would not know that "long drinks" were not from Finland.

Finally, it should also be noted that the name uses the article "The" which only adds to the deception by stating that this is a specific long drink, "The Finnish Long Drink," meaning from Finland. *See* Merriam-Webster, The (available at https://www.merriam-webster.com/dictionary/the) ("used as a function word to indicate that a following noun or noun equivalent is a unique or particular member of its class"; e.g. "the President" "the Lord").

*     *     *     *     *

In sum, under the analysis in *Forschner Group*, the Products' name constitutes a designation of geographic origin (*i.e.,* the Products are from Finland). This conclusion is bolstered by the additional statements on the packaging, as analyzed through the lens of *Hesse*, *Marty*, *Kay*, *Peacock*, *Shalikar*, and *Wasser*. Because the packaging hid the disclaimer, the claim is analogous to *Marty* and *Wasser* while critically distinguishable from *Nelson* and *Hardy*. Finally, the plethora of statements on the package and the designation of geographic origin in the name make the matter as readily distinguishable from *Dumas*.

12

Given the weight of this authority and the recognition that it is "only the 'rare situation' where 'it [is] impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived,'"[3] the Court should deny the Motion and allow the matter to proceed.

## II.   RULE 15 MANDATES THAT LEAVE TO REPLEAD SHOULD BE GIVEN FREELY

Federal Rule of Civil Procedure 15 mandates that courts "should freely give leave" to amend in the early stages of litigation "when justice so requires." Fed. R. Civ. P. 15(a)(2). This permissive standard is consistent with the Second Circuit's "strong preference for resolving disputes on the merits." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015). Plaintiff believes his Complaint sets forth plausible claims for relief; nonetheless, if the Court finds that any aspect of Plaintiff's claims is insufficiently pled, Plaintiff respectfully requests leave to amend to address the insufficiency.

## CONCLUSION

For the foregoing reasons, the Court should deny the Motion to Dismiss. Or in the alternative, the Court should grant Plaintiff leave to file an Amended Complaint.

Date: March 29, 2023                                    Respectfully submitted,

                                                                **REESE LLP**

                                                                */s/ Charles D. Moore*
                                                                Charles D. Moore
                                                                100 South 5th Street, Suite 1900
                                                                Minneapolis, Minnesota 55402
                                                                Telephone: 701-3907214
                                                                Email: *cmoore@reesellp.com*

                                                                **REESE LLP**
                                                                Michael R. Reese
                                                                100 West 93rd Street, 16th Floor

---

[3] *Hesse*, 463 F.Supp.3d at 467 (quoting *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 939 (9th Cir. 2008)) (modification in original).

New York, New York 10025
Telephone: (212) 643-0500
Email:  *mreese@reesellp.com*

**BEN TRAVIS LAW, APC**
Ben Travis
4660 La Jolla Village Drive, Suite 100
San Diego, California  92122
Telephone: (619) 353-7966
Email: *ben@bentravislaw.com*

*Attorneys for Plaintiff and the Proposed Class*